UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| DANA O., | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § CIVIL ACTION NO. 2:25-CV-00046 |
| | § |
| MICHELLE A. KING, *et al.*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Dana O. ("Dana")[1] filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny her application for Social Security disability and supplemental security income benefits. Now pending are Dana's and the Commissioner's construed cross-motions for summary judgment. (D.E.s 11, 16, 17). Dana contends that the Appeals Council erred when it concluded that her rebuttal vocational report was not material and denied her request for review. For the reasons discussed further below, it is recommended that Dana's motion (D.E. 11) be **GRANTED**, the Commissioner's motion (D.E. 16) be **DENIED**, and the Commissioner's denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

---

[1] Pursuant to the May 1, 2018, "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this order uses only Plaintiff's first name and last initial.

I. **JURISDICTION**

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Dana resides in Aransas County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

II. **BACKGROUND & ADMINISTRATIVE RECORD**

   *a. Application and Hearing*

In June 2023, Dana filed applications for disability insurance benefits and supplemental security income, alleging a disability commencing on December 13, 2022. (D.E. 8-1 at 252-65). The onset date was later amended to January 14, 2023. (*Id.* at 23, 48). The Commissioner denied Dana's application both initially and on reconsideration. (*Id.* at 62, 80).

The ALJ held a hearing on August 9, 2024. (*Id.* at 45). At the hearing, a vocational expert identified Dana's past relevant work as a fast-food worker. (*Id.* at 58). The ALJ asked the vocational expert whether Dana's past relevant work could be completed by a person with the same age, educational history, and work history as Dana with no exertional limitations, but who was limited to only: (1) occasional interaction with supervisors, co-workers, and the general public; (2) understanding, remembering, and carrying out simple job instructions; and (3) occasional changes in the work setting. The vocational expert responded that this person could not complete Dana's past work. (*Id.*). However, such a person could complete other jobs, including: (1) table worker, D.O.T. 739.687-182, with 12,050 jobs nationwide; (2) assembler, D.O.T. 734.687-018, with 24,733 jobs nationwide;

or (3) eyeglass assembler, D.O.T. 739.687-086, with 24,733 jobs nationwide. (*Id.* at 59-60). The vocational expert testified that her testimony was consistent with the information in the DOT. (*Id.* at 60).

      *b. ALJ Decision*

On August 27, 2024, the ALJ issued an opinion concluding that Dana was not under a disability since January 14, 2023. (*Id.* at 23-33). At the first step of the sequential evaluation process, the ALJ concluded that Dana had not engaged in substantial gainful activity since January 14, 2023. (*Id.* at 25). At the second step, the ALJ concluded that Dana had several severe impairments, including major depressive disorder, generalized anxiety disorder, and insomnia. (*Id.* at 26). At the third step, the ALJ concluded that Dana did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*). The ALJ concluded that Dana had the RFC to perform a full range of work at all exertional levels, but had non-exertional limitations including: (1) only occasional interaction with supervisors, co-workers, and the general public; (2) understanding, remembering, and carrying out only simple instructions; and (3) only occasional changes in the work setting. (*Id.* at 28).

At step four, the ALJ concluded that, based on her RFC, Dana was not able to perform her past relevant work. (*Id.* at 31). However, at step five, the ALJ concluded based on the vocational expert's testimony that Dana could perform other jobs in the national economy, including table worker, assembler, and eyeglass assembler. (*Id.* at 31-

32). Thus, the ALJ concluded that Dana was not under a disability from January 14, 2023, through the date of the decision. (*Id.* at 32).[2]

    c. *Appeals Council*

In support of her request for review to the Appeals Council, Dana submitted a report from Karen R. Starr, an accredited disability representative, regarding the jobs identified by the vocational expert that formed the basis of the ALJ's conclusion at step five. (*Id.* at 17-19). In her report, Starr stated the following. The job numbers given by the vocational expert were overstated, and the smaller number of actual jobs was even further reduced by how they are performed. (*Id.* at 17). This conclusion was based on Starr's experience, job performance information collected by the Department of Labor and Bureau of Labor Statistics, and job numbers compiled in the most recent version of Job Browser Pro SkillTRAN ("JBP"). Starr noted that JBP produces job numbers only for the specific DOT titles at issue instead of a general group of jobs. (*Id.*).

Starr further stated that, as to the specific jobs identified by the ALJ at step five, only 2,875 table worker jobs exist in the national economy. (*Id.*). Further, the DOT's job description has not been updated since 1977 and therefore fails to account for the fact that the job it describes required working with asbestos felt, making the listing obsolete. (*Id.* at 17-18). Accordingly, Starr opined that no jobs still exist under this DOT title. (*Id.* at 18). Moreover, even if some jobs still exist, the majority of these jobs require face-to-face

---

[2] The ALJ incorrectly wrote January 14, 2022, as the alleged onset date at the end of his opinion. (D.E. 8-1 at 32). However, the rest of the opinion correctly reflects an alleged onset date of January 14, 2023.

discussions, working in a group, an ability to lead or coordinate, and making decisions that affect other workers, which is inconsistent with the ALJ's identified limitations. (*Id.*). Second, as to the assembler position, the job description indicates that it describes making political campaign or other advertising buttons, and the JBP indicates that the number of jobs under this specific description is too difficult to determine or too small to matter. (*Id.* at 18). Starr asserted that, as a matter of common sense, it was absurd to believe that 25,000 people worked full-time in this job. (*Id.*). Starr stated the same of the eyedropper assembler job, which consisted of slipping rubber bulbs over the end of glass tubes to form eyedroppers. (*Id.* at 19). Starr further noted that the vocational expert testified that both the assembler and eyedropper assembler jobs exist in the exact same number nationwide, which was strange. (*Id.*). Starr's curriculum vitae indicated that she was a vocational expert for the Social Security Administration from 2005 to 2007, and she is now, among other things, a disability representative. (*Id.* at 41).

The Appeals Council denied Dana's request for review of the ALJ's decision. (*Id.* at 6-8). Regarding Starr's report, the Appeals Council concluded that it did "not show a reasonable probability that it would change the outcome of the decision," and did not exhibit the report. (*Id.* at 7).

### III. DISCUSSION

In her motion for summary judgment, Dana contends that the Appeals Council erred when it concluded that Starr's report was not material and denied her request for review. (D.E. 11 at 6). Specifically, she argues that the report directly contradicts the vocational

5

expert's testimony by showing that all three of the jobs the vocational expert identified, and that the ALJ relied on at step five, either no longer exist or exist in significantly smaller numbers than the vocational expert testified. (*Id.* at 10-13). She asserts that the Appeals Council was required to consider the evidence, and its failure to do so requires remand to consider whether the contents of Starr's report created a reasonable probability of a different outcome. (*Id.* at 13-17).

The Commissioner responds that the vocational expert had expertise and current knowledge of the working conditions, requirements, and job numbers for current occupations in the national economy, and her testimony constitutes substantial evidence in support of the ALJ's decision. (D.E. 16 at 4-5). The Commissioner argues that, in contrast, Starr is a "disability representative" who has not worked as a vocational expert in nearly two decades, and it is accordingly unclear whether she has current knowledge of working conditions or job numbers. (*Id.* at 5). The Commissioner argues that the Appeals Council explicitly considered Starr's report and concluded that it did not show a reasonable probability that it would change the outcome. (*Id.* at 6-7). Regardless, the Commissioner argues that the vocational expert's testimony was substantial evidence supporting the ALJ's decision. (*Id.* at 7).

Dana replies that the Commissioner's response primarily advances post-hoc rationalizations for the Appeals Council's conclusion that Starr's report did not have a reasonable probability of altering the result. (D.E. 17 at 1-3). She argues that the Appeals Council gave no reasons, and it is improper to consider them. (*Id.*).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The burden has been described as more than a scintilla, but lower than a preponderance. *Id.* On review, the Court may not reweigh the evidence, and it is the ALJ's responsibility to resolve conflicts in the evidence, not the Court's. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In other words, "in dealing with a determination or judgment which an administrative agency alone is authorized to make, [a reviewing court] must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez*, 64 F.3d at 173-174; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant

bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

At step five, ALJs "often seek the views of vocational experts," who must have "expertise and current knowledge of working conditions and physical demands of various jobs," along with "knowledge of the existence and numbers of those jobs in the national economy." *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (internal quotation marks and brackets omitted). "When offering testimony, the experts may invoke not only publicly available sources but also information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling." *Id.* (internal quotation marks omitted).

When requesting review by the Appeals Council, a claimant "should submit any evidence [they] wish to have considered by the Appeals Council with [their] request for review," and the Appeals Council will consider the evidence in accordance with § 404.970. 20 C.F.R. § 404.968(a). Under § 404.970, the Appeals Council will review a case if, among other reasons, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

"When a claimant properly presents new evidence, and the AC denies review, the AC must show in its written denial that it has adequately evaluated the new evidence." *Labourdette v. Soc. Sec. Admin.*, No. CIV.A. 14-1594, 2015 WL 4879364, at *6 (E.D. La.

8

Aug. 13, 2015) (citing *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir. 1980)). However, "[w]here the newly submitted evidence is not so significant as to require remand to the ALJ for additional consideration, the Appeals Council's denial of the claimant's request for review does not constitute reversible error." *Lewis v. Saul*, No. CV H-19-2380, 2020 WL 4194023, at *9 (S.D. Tex. July 7, 2020) (internal quotation marks omitted). Further, even if new evidence is material and significant, "the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Id.* "In other words, the question before the court is not whether there is a likelihood that the ALJ would have made a different decision, but whether the decision is supported by substantial evidence in light of the evidence submitted to the Appeals Council." *Id.*

In the Dictionary of Occupational Titles, the job of table worker requires "[e]xamin[ing] squares (tiles) of felt-based linoleum material passing along on conveyor and replac[ing] missing and substandard tiles." D.O.T. 739.687-182. An assembler "[i]nserts paper label in back of celluloid or metal advertising buttons and forces shaped stickpin under rim." D.O.T. 734.687-018. An eye-dropper assembler "[s]lips rubber bulbs over ends of glass tubes to form eye droppers." D.O.T. 739.687-086. Courts have noted that the DOT is outdated given that it has not been updated since 1991, and some of the occupations have not been updated for far longer. *See Duran v. O'Malley*, 754 F. Supp. 3d 251, 263 (D. Mass. 2024) (collecting cases).

Here, Dana submitted evidence directly refuting the testimony of the vocational expert that the ALJ relied on at step five, and it is not clear from the record that the Appeals Council adequately evaluated this evidence. *Labourdette*, 2015 WL 4879364 at *6. The Appeals Council indicated that it considered Starr's report, but it concluded that the report did "not show a reasonable probability that it would change the outcome of the decision." (D.E. 8-1 at 7). The Appeals Council did not provide any explanation for this conclusion. The Commissioner now posits that the denial was because it was unclear whether Starr had current knowledge of working conditions or job numbers comparable to the vocational expert's knowledge. (D.E. 16 at 4-5). However, the Appeals Council did not say this, and courts on judicial review are limited to considering the reasons stated during the administrative proceedings. *Newton*, 209 F.3d at 455.

The remaining question is whether substantial evidence supports the ALJ's decision in light of the new evidence submitted to the Appeals Council. *Lewis*, 2020 WL 4194023 at *9. The ALJ relied solely on the testimony of the vocational expert to reach his conclusion at step five. (D.E. 8-1 at 31-32). Starr's report directly refutes the vocational expert's testimony, however, and in light of the report and the information within, the vocational expert's testimony does not constitute substantial evidence without some explanation of why it should be given greater weight.[3] Starr's report raises issues with the

---

[3] As noted, the Commissioner's briefing suggests the vocational expert's qualifications are the reason her opinion should be given greater weight than Starr's. (D.E. 16 at 4-5). While this may be a sufficient explanation, it is not stated anywhere in the administrative record and cannot be considered on judicial review. *Newton*, 209 F.3d at 455.

identified positions and job numbers that, on their face, appear credible given the outdated nature of the DOT and the details of the jobs identified. (*See* D.E. 8-1 at 17-19); *Duran*, 754 F. Supp. 3d at 263 (discussing issues with the DOT and outdated job descriptions).

Finally, although Dana has not raised this issue in her briefing, it is worth noting that the hearing transcript indicates potential miscommunication between the ALJ and the vocational expert when discussing alternative jobs. First, the vocational expert and ALJ both refer to an "eyeglass assembler" position under D.O.T. 739.687-086, but that title applies to a position called "eye-dropper assembler." D.O.T. 739.687-086. There are several occupations in the DOT relating to the assembly of eyeglass components, so this misstatement of the title of the occupation raises questions about the vocational expert's identification of this job. *See, e.g.,* D.O.T. 713-384.010, 713-684.014. Further, when the vocational expert initially identified jobs, she provided job numbers only for table worker, with 12,050 jobs, and "eyeglass assembler," with 24,733 jobs. (D.E. 8-1 at 59). The ALJ then requested the job total for the assembler position, and the vocational expert stated that it had 24,733 jobs. (*Id.*). The ALJ then again requested the job total for the "eyeglass assembler" position, and the vocational expert testified again that there were 24,733 such jobs. (*Id.* at 60). Given the very specific, identical job number given for both jobs with "assembler" in the title, and the awkward nature of the vocational expert's testimony on this subject, it is unclear whether the vocational expert and ALJ were on the same page regarding the details of the three jobs provided.

11

## IV. RECOMMENDATION

Accordingly, it is recommended that Dana's motion (D.E. 11) be **GRANTED**, the Commissioner's motion (D.E. 16) be **DENIED**, and the Commissioner's denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

Respectfully submitted on January 22, 2026.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).